IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **DORTHY W.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:20-cv-00407 |
| | ) |
| **KILOLO KIJAKAZI,**[2] | ) |
| | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Dorthy W. ("Dorthy") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for a period of disability and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Dorthy alleges that the Administrative Law Judge ("ALJ") erred by (1) failing to properly weigh her treating physician's opinion and (2) failing to provide an adequate explanation of the analysis of medical opinions and the treatment record. I agree that the ALJ's decision is not supported by substantial evidence. Accordingly, I **RECOMMEND GRANTING in part** Dorthy's Motion for Summary Judgment (Dkt. 16), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 18), and **REMANDING** this matter for further administrative consideration.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## **STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Dorthy failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

limitations would cause him to experience his claimed symptoms during work and if so, how often) (citations omitted).

## CLAIM HISTORY

Dorthy filed for DIB on February 22, 2017, claiming that her disability began on August 4, 2016, due to spinal nerve damage, depression, carpal tunnel syndrome, and a learning disability. R. 11, 273. Dorthy's date last insured ("DLI") was December 31, 2021; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 13; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Dorthy's applications at the initial level of administrative review on September 26, 2017, and reconsideration level on February 16, 2018. R. 173–177, 183–189. On April 22, 2019, ALJ David Lewandowski held a hearing to consider Dorthy's claims for DIB. R. 111–133. Counsel represented Dorthy at the hearing, which included testimony from vocational expert Asheley Wells. Id. On July 16, 2019, the ALJ entered his decision analyzing Dorthy's claims under the familiar five-step process[4] and denying her claim for benefits. R. 11–26.[5]

The ALJ found that Dorthy was insured at the time of the alleged disability onset and that she did not engage in substantial gainful activity during the period from her alleged onset date on

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Dorthy was 42 years old on her alleged onset date and 45 years old on the date of the ALJ's opinion, making her a younger person under the Act. R. 25.

August 4, 2016, through her DLI. R. 13. The ALJ found that Dorthy suffered from the physical and mental severe impairments of lumbar stenosis, cervical degenerative changes, obesity, major depressive order, and generalized anxiety disorder. R. 14. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. Id.

The ALJ concluded that Dorthy retained the RFC to perform sedentary work with certain exertional limitations. R. 16. Specifically, Dorthy could occasionally perform postural activities but could not crawl or climb ladders, ropes, or scaffolds; could occasionally push and pull with her lower extremities; cannot reach overhead; should avoid concentrated exposure to vibrations and industrial hazards; could understand, remember, and carry out simple instructions and perform simple tasks; and will be off task less than 10% of the workday. Id. The ALJ determined that Dorthy could not perform her past relevant work, but she could perform jobs that exist in significant numbers in the national economy, such as an assembler, weight tester, and addressing clerk. R. 25–26. Thus, the ALJ determined that Dorthy was not disabled. R. 26. Dorthy appealed the ALJ's decision, and the Appeals Council denied her request for review on May 15, 2020. R. 1–6.

## ANALYSIS

Dorthy alleges that the ALJ erred by (1) using the incorrect standard in evaluating her treating physician's opinion and (2) failing to provide an adequate analysis of medical opinions and the treatment record.

### A. Medical History Overview

1. Medical Treatment

From 2016 to 2019, Dorthy complained of back, neck, and left arm pain to her primary care physician, Matthew S. Kaatz, M.D., and other medical providers. Dr. Kaatz noted that Dorthy alternated between a good mood with a good range of affect or depressed mood with a blunt range of affect, she interacted appropriately, and she could sit comfortably during the medical visit. R. 370, 372, 373, 375, 377, 379, 406, 420, 462, 463, 683, 685. On her January 27, 2016 visit with Dr. Kaatz, Dorthy reported leg numbness, weakness, and back pain that brought her to tears after she would bend, stoop, twist, and lift at work and the grocery store. R. 381. Dr. Kaatz observed that Dorthy was slow to transition and had an antalgic gait. Id. On a May 20, 2016 visit with Dr. Kaatz, Dorthy stated that lifting and bending exacerbated her back issues and reported a 9/10 pain level. Dr. Kaatz found that Dorthy had depressed mood and continued her depression mediation, increased her back pain medication, and provided her with a work-related restriction of lifting no more than 10 pounds with no repetitive bending, stooping or twisting at the waist. R. 378.

On June 20, 2016, Dorthy reported to Dr. Kaatz that her pain medication allowed her to work a light duty job with the restriction of no repetitive bending, stooping, or twisting at the waist. Dr. Kaatz agreed and continued her light duty work restrictions. R. 377. On July 20, 2016, Dorthy complained of back pain, but again reported that she could perform her job on light duty. R. 376. On September 12, 2016, Dorthy complained to Lauren Dorn, PA-C, of radiating pain down both lower extremities that persisted for about a year. R. 477. Ms. Dorn found that Dorthy was pleasant, with a normal gait, and negative straight leg raise test. R. 478. Ms. Dorn administered an epidural steroid injection on a follow-up visit on October 6, 2016. The injection was unsuccessful as Dorthy's pain and leg numbness worsened. R. 475.

On November 11, 2016, Dorthy underwent an L4-L5 lumbar decompression surgery performed by James Leipzig, M.D., who noted that she was alert, had general tenderness in her lumber spine, no sensory deficit, and had a negative straight leg raise. R. 352. On her follow-up visit with Dr. Kaatz on November 23, 2016, Dorthy had a lot of back pain, difficulty moving, and sat in a guarded position. R. 373. On December 1, 2016, Dorthy reported to Ms. Dorn that she was doing well, her leg had resolved, and she was walking for exercise. R. 472. Ms. Dorn found that Dorthy was well healed, had tenderness around the lumbar spine and mild swelling. Ms. Dorn recommended activity and walking. R. 473.

On January 5, 2017, Dorthy reported that she was very happy, had no leg symptoms, but had some lower back soreness. Ms. Dorn recommended physical therapy, but Dorthy declined. R. 526–527. On February 13, 2017, Dorthy reported to Ms. Dorn that she was doing great, had no pain, and wanted to return to light duty work for several weeks before transitioning to full lifting duties, which generally would require lifting up to 40 pounds. R. 524. Ms. Dorn found that Dorthy had a normal gait, she was neurologically grossly normal, and she was sitting comfortably. Ms. Dorn started Dorthy on light duty work for several weeks before transitioning her to full duty. Id.

After returning to work in 2017, Dorthy's progress quickly reversed and Dr. Kaatz noted that she was a "candidate for disability" and that she should stay out of work indefinitely. R. 372. On February 20, 2017, Dorthy told Dr. Kaatz that within hours of restarting her job she had a flare up of pain. Id. Dr. Kaatz determined that Dorthy had chronic back pain secondary to lumbar degenerative disc disease; had failed back surgery syndrome; and that weight and lack of exercise were factors in Dorthy's overall lack of functioning. Dr. Kaatz recommended better diet

6

and exercise. Id. On her June 19, 2017 visit with Dr. Kaatz, Dorthy reported a 9/10 pain level, with standing and walking provoking her symptoms. R. 406.

On October 2, 2017, Dr. Kaatz determined that Dorthy's major depressive disorder in partial remission affects her pain threshold and noted that she was down 22.4 pounds but still had chronic pain. R. 464. Dorthy visited a pain management provider, Duane Dixon, M.D., on November 28, 2017, and complained of back and neck pain that worsened with sitting, walking, exercise, standing, and stretching. R. 647. Dr. Dixon found that Dorthy had general tenderness and range of motion limitations, but also had an exaggerated pain response and required multiple breaks for full effort. R. 649, 650. Dr. Dixon noted that Dorthy appeared to be depressed, tearful, and had difficulty receiving information and following through. R. 652.

From March to May 2018, Dorthy visited Dr. Kaatz and reported back and left arm pain and family stressors in her life, namely her daughter's mental illness and medical condition. R. 461, 462, 463. On May 10, 2018, Dr. Kaatz saw Dorthy for severe left arm pain and found that touching Dorthy's arm caused extreme pain. He also noted that she was in a depressed mood. R. 461. On May 14, 2018, Dorthy returned to Dr. Dixon with complaint of low back pain that radiated to her lower extremities and left arm pain with an average of 4 pain level. Dr. Dixon found that her pain was well controlled. R. 606–609.

On May 17, 2018, Dr. Kaatz found that Dorthy had severely decreased range of motion on her left shoulder and persistent left shoulder pain which was not alleviated with his administered steroid injection. R. 459, 460. Dorthy's MRI conducted by Dr. Kaatz on June 19, 2018, showed multilevel disease. R. 458. In late June 2018, Dorthy had a neurosurgical evaluation with Claudia Martin, M.D., for her cervical radiculopathy and Dorthy complained of severe neck pain radiating to her left arm and left shoulder, which she was unable to rotate.

R. 513. Dr. Martin found that Dorthy had tenderness in her left arm and shoulder and a decreased range of motion in all directions, was unable to rotate her left shoulder, and could not lift her arm up in the air. R. 514. Dr. Martin recommended an orthopedic evaluation of Dorthy's shoulder before considering surgical intervention for her cervical spine. She also ordered epidural steroid injections for C6-7. R. 516.

On July 10, 2018, Dr. Dixon noted that Dorthy continued to have lower back and neck pain and was anxious, and was cradling her left arm, but had a normal gait and station. R. 598. Dorthy received a steroid injection on August 20, 2018, and reported that her average pain at the time was 4/10 in intensity, with her pain mostly controlled. R. 581–582. On October 2018, Dorthy reported that her prior injection had not helped, but that a back brace, TENS unit, and compound cream provided moderate relief and that her pain averaged 3/10. R. 564–565. Dr. Dixon noted that she appeared anxious and depressed with impaired recall, retention, and memory. R. 565. On November 29, 2018, Dr. Kaatz noted that Dorthy's mood was stable and that her major bipolar disorder was controlled, despite her self-report of family stressors, and recommended dietary discretion and exercise for weight loss. R. 686.

Dorthy had a cervical fusion on January 29, 2019, and reported on February 8, 2019, to Dr. Dixon that her back and neck pain was a 4 in intensity and stated she had regained sensation and movement in her left arm. R. 544–546. Dr. Kaatz noted that Dorthy's gait and station were normal, and her pain was "well controlled," but that she seemed depressed. R. 545–546. On February 15, 2019, Dorthy reported the regained strength in her left arm and Patrick W. Kenney, NP-C, noted that she had full motor strength and sensation was intact. R. 664.

On March 7, 2019, Dr. Kaatz noted that Dorthy had weight gain due to her neck surgery and diagnosed her with decompensated bipolar disorder with a depressive phase. R. 685. On

March 27, 2019, Dorthy reported to Dr. Kaatz that her neck had improved but she still had back pain and numbness and tingling in her left arm. R. 683.

2. Medical Opinion Evidence

On July 12, 2017, Dorthy went to Nicholas Lee, Ph.D., for a consultative mental examination. R. 415–418. Dr. Lee observed that Dorthy was tearful throughout the evaluation as she described her symptoms of depression after being placed on FMLA leave and short-term disability in February 2017. R. 415. Dr. Lee determined that Dorthy had moderate-to-severe major depressive disorder. R. 417.

On January 24, 2018, Dorthy had a consultative examination with Melinda M. Fields, Ph.D., who reviewed Dr. Lee's examination notes. R. 433–438. Dr. Fields found that Dorthy was depressed and irritable with impaired recall and persistence and slow pace, but had adequate concentration. R. 436. Dr. Fields also noted that Dorthy did not persist on more difficult items and appeared to have physical discomfort. R. 433, 437. Dr. Fields noted that Dorthy's symptoms were consistent with major depressive disorder and generalized anxiety disorder. Id. Dr. Fields concluded that it was unlikely that Dorthy would complete a typical workweek without presentation of psychiatric symptoms, and it was likely that she would have trouble successfully navigating stressors inherent in gainful employment such as the need to interact appropriately with supervisors, co-workers, or the public in general. R. 438. The ALJ found the opinion "vague" and gave it little weight. R. 24.

On September 20, 2017, state agency psychologist Howard S. Leizer, Ph.D., reviewed Dorthy's record and found that Dorthy was moderately limited in concentration and pace, understanding and memory limitations, and no social interaction or adaptation limitations. R. 147–148. Dr. Leizer found Dr. Lee's medical opinion two months prior to be more restrictive

than his findings because Dorthy showed improved mood and mental symptoms. R. 148. Similarly, on February 14, 2018, Richard Luck, Ph.D., reviewed Dorthy's record and found that Dorthy could perform "simple-unskilled" mental work and that Dorthy's inconsistent effort and poor persistence made her scores invalid. R. 165–167. Dr. Luck found the opinions of Drs. Lee and Fields more restrictive than his findings and inconsistent with the record. R. 167–168. The ALJ gave these opinions significant weight due to their special knowledge of the disability program. R. 25.

On April 18, 2018, Dr. Kaatz determined that Dorthy could stand/walk for less than two hours, sit for about two hours, and lift or carry ten pounds occasionally and less than ten pounds frequently in a workday. R. 440. Dr. Kaatz further determined that Dorthy could never reach overhead, but could occasionally reach in all other directions and push/pull, and continuously handle and finger. R. 440–441. Accordingly, Dr. Kaatz concluded that Dorthy's pain or other symptoms would constantly interfere with her attention and concentration and that she would likely be absent from work more than four times per month. R. 441. Dr. Kaatz reiterated the limitations on September 10, 2019, and signed a checkbox form finding that the limitations from the April 2018 opinion still applied to Dorthy and would continue for an additional twelve months. R. 681. The ALJ noted that Dr. Kaatz's limitations were "below sedentary level, especially in regard to sitting," but gave Dr. Kaatz's opinions little weight as he found them inconsistent with the doctor's notes and the record. R. 23.

On September 22, 2017, state agency physician R.S. Kadian, M.D., reviewed Dorthy's record, before speaking with Dr. Kaatz on September 26, 2017 (R. 139), and found that Dorthy could stand and/or walk for two hours; sit for about six hours with normal breaks in an eight-hour workday; and lift up to twenty pounds occasionally and ten pounds frequently during an

10

eight-hour workday. R. 145. Dr. Kadian also found that Dorthy was able to push and/or pull with limitations in both lower extremities and that Dorthy's ability to reach overhead was also limited. R. 146. Dr. Kadian found that Dorthy had no environmental, communicative, or visual limitations and could frequently engage in postural activities except she could only occasionally climb ramps/stairs and crawl and never climb ladders/ropes/scaffolds. R. 145–146. Similarly, on February 16, 2018, state agency physician Richard Surrusco, M.D., reviewed Dorthy's record and reached the same findings as Dr. Kadian, except he found that Dorthy could engage in unlimited pushing and pulling and could stand and/or walk for six hours in an eight-hour workday. R. 163–165. The ALJ gave these opinions little weight as the opinions were before Dorthy's neck problems developed and found that she could perform light level carrying and lifting. R. 24.

### B. Treating Physician's Opinion

Dorthy alleges that the ALJ used the incorrect standard to evaluate the medical opinions of her treating physician, Dr. Kaatz. Pl.'s Br. at 3, Dkt. 16. Specifically, Dorthy points to Dr. Kaatz's medical opinions on April 18, 2018 and September 10, 2019, which she alleges that she had limitations that were not considered properly by the ALJ. R. 22–23, 440–441, 681.[6] Dorthy also points to the ALJ's dismissal of Dr. Kaatz's determination that Dorthy was a "candidate for disability" and should be out of work "indefinitely" as "vague and uncertain" without an explanation of how he arrived at this conclusion. R. 24. I agree.

---

[6] Dr. Kaatz determined on April 18, 2018 that Dorthy could stand/walk for less than two hours, sit for about two hours, and lift/carry ten pounds occasionally and less than ten pounds frequently in a workday. R. 440. Dr. Kaatz also found that Dorthy could never reach overhead, but could occasionally reach in all other directions and push/pull. R. 441. Further, Dr. Kaatz found that Dorthy's severe mental impairment of major bipolar disorder would constantly interfere with Dorthy's attention and concentration, and she would likely be absent from work more than four times per month. Id. Dr. Kaatz reaffirmed these limitations on September 10, 2019. R. 681.

11

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[7] 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011).

Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

---

[7] The social security regulations regarding the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c (setting out rules for claims filed on or after March 27, 2017, including that no specific evidentiary weight, including controlling weight will be given to any medical opinions). However, as this claim was filed on February 22, 2017, prior to the effective date of the amended rule, I will apply the rules in 20 C.F.R. §§ 404.1527(c), 416.927.

12

The Fourth Circuit recently clarified the level of explanation required by the ALJ to sufficiently support the weight given to a medical opinion. Arakas v. Comm'r, 983 F.3d 83, 107 (4th Cir. 2020). The ALJ must provide a narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189. The failure of an ALJ to specifically state what treatment history or evidence contradicts a particular medical opinion means "the analysis is incomplete and precludes meaningful review." Id. at 190. "Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the opinion, but must remand the case so that the ALJ can adequately explain if and how the evidence supports his RFC determination." Rucker v. Colvin, No. 715cv148, 2016 WL 5231824, at *4 (W.D. Va. Sept. 20, 2016) (citing Mascio, 780 F.3d at 637).

Here, the ALJ did not appropriately consider all of these factors, or the record, in determining that Dr. Kaatz's opinions merited little and no weight. As an initial matter, the ALJ never acknowledged that Dr. Kaatz was a treating physician, nor did he discuss Dr. Kaatz's findings on Dorthy's ability to reach or push or pull during a workday. See Christian v. Saul, No. 1:20-00051, 2021 WL 1170012, at *3–4 (S.D.W. Va. Mar. 26, 2021) (remanding where ALJ only addressed two of the § 404.1527(c) factors, noting that "[the remaining factors], arguably, might have cut in [claimant's] favor"). See Sharp v. Colvin, 660 F. App'x 251, 257 (4th Cir. 2016) ("[The ALJ must provide] specific reasons for the weight given to the treating source's medical opinion to enable reviewing bodies to identify clearly the reasons for the ALJ's decision."); Lisa C. v. Saul, No. 7:18-cv-269, 2019 WL 3949068, at *7 (W.D. Va. Aug. 6, 2019)

(ALJ must consider 20 C.F.R. §§ 404.927(c)(2)–(5) and 416.927(c)(2)–(5) factors); See Ricks v. Comm'r, No. 2:09–CV–622, 2010 WL 6621693 (E.D. Va. Dec. 29, 2010) ("None of [the factors required to be considered] may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion.").

  The ALJ assigned Dr. Kaatz's April 2018 and September 2019 opinions little weight, stating that Dr. Kaatz's own examination findings did not support the limitations he assessed, and the remainder of record was inconsistent with his opinion that Dorthy was unable to perform sedentary work and that Dorthy's pain would cause significant absenteeism. R. 23–24. Further, the ALJ acknowledged Dr. Kaatz's finding that Dorthy's back surgery failed in 2017, but discounted the finding due to Dr. Kaatz's notes that Dorthy's obesity and lack of exercise were factors in her overall functioning. R. 22–23. The ALJ noted that her obesity "could exacerbate her back pain issues, but it would not generally cause great standing and walking limitations, or be expected to limit her sitting ability" but did not cite to the record nor a medical opinion to explain how he arrived at that determination. R. 22. Further, the ALJ also stated that Dr. Kaatz's own exam findings were frequently "mild after [her lumbar surgery], often simply noting she was sitting comfortably." R. 23. The ALJ also noted that "the remainder of the record, particularly the findings and her reports of moderate pain in pain management visits, also d[id] not indicate that she would be limited below the sedentary level, or that she ha[d] particular sitting limitations." Id. However, the ALJ does not cite a medical opinion regarding Dorthy's sitting limitations that he gave greater weight. Id. Thus, it is unclear how the ALJ arrived at his RFC determination in lieu of conflicting medical opinions regarding Dorthy's RFC, especially because he gave medical opinions assessing her physical impairments little weight. R. 24. While the ALJ's statements may be true, his job is not to cherry pick from the record medical evidence

in support of his decision, while ignoring medical evidence that does not. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017) (noting that a "significant part of the ALJ's misapplication of the treating physician rule was his reliance on cherry-picked evidence skewed to contradict [the claimant's] doctors").

Further, Dorthy argues that the ALJ failed to explain why he gave no weight to Dr. Kaatz's opinion in February 2017 that she was a "candidate for disability" and to "keep her out of work indefinitely" and further discounted the opinion as "vague or uncertain." R. 24, 372. The ALJ briefly mentioned the state agency physicians' opinions which found that Dorthy could perform light carrying/lifting abilities, but gave the opinions little weight because they were before her surgery and did not explain which physical RFC limitations he found persuasive. R. 24, 145–146, 163–165. Thus, is it unclear why the ALJ found Dr. Kaatz's opinion "vague and uncertain" and warranted no weight.[8]

While the ALJ is under no obligation to accept any medical opinion, he must explain the weight afforded to each opinion. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96–8p. The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave" to the opinion and "the reasons for that weight." SSR 96–2p. If the ALJ provides a sufficient explanation the court "must defer to the ALJ's assignments of weights unless they are not supported by substantial evidence." Dunn v. Colvin, 607 F. App'x 264, 271

---

[8] The Commissioner speculates that Dr. Kaatz "writing that Dorthy is a 'candidate for disability' could mean that she is someone who can apply for benefits, not that Dr. Kaatz was opining that Plaintiff was entitled to DIB or familiar with the requirements that Plaintiff would need to satisfy to obtain benefits." The Commissioner further stated that "Dr. Kaatz's statement that 'we'll keep her out of work indefinitely' does not explain whether Dr. Kaatz was restricting Plaintiff from her past relevant work or all substantial gainful activity." Def.'s Br, at 20 , Dkt. 19. That speculation of the meaning of "vague and uncertain" is precisely the issue. The ALJ left the court to guess how he arrived at his conclusion that Dr. Kaatz's opinion was vague and uncertain and warranted no weight. Accordingly, for the reasons stated in this Report and Recommendation, I conclude that the ALJ evaluation of Dr. Kaatz was not supported by substantial evidence.

(4th Cir. 2015) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). However, if the ALJ does not adequately explain the weight given to each medical opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Thus, I find both that the ALJ failed to adequately consider all of the 20 C.F.R. § 416.927 factors and that his reasons for giving little and no weight to Dr. Kaatz's medical opinions are insufficiently explained. The ALJ attempted to build a bridge from the evidence to his conclusions when weighing the medical opinion evidence in this case, but that bridge is not "accurate and logical," as required by Monroe v. Colvin.

I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for his opinion. Here, the ALJ did not appropriately consider the 20 C.F.R. § 416.927 factors and did not adequately explain his reasons for giving Dr. Kaatz's opinions little and no weight. Accordingly, I conclude that substantial evidence does not support the ALJ's decision.

Because I find that remand is warranted based on the ALJ's failure to adequately explain his decision to discount Dr. Kaatz's opinions, Dorthy's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Dorthy's remaining allegations of error.

## CONCLUSION

For these reasons set forth above, I **RECOMMEND GRANTING in part** Dorthy's

motion for summary judgment, **DENYING** the Commissioner's motion for summary judgment this case, and **REMANDING** this matter to the Commissioner for additional consideration under sentence four of 42 U.S.C. § 405(g).

The clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: March 2, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge